IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MONDER KHOURY,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

CIV-S-03-1225   DFL JFM
CR-S-99-0093    DFL JFM

ORDER

    Petitioner, a federal prisoner proceeding pro se, brings a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

I.

    Petitioner was convicted on March 28, 2001 of three counts: (1) conspiracy to manufacture one kilogram or more of methamphetamine; (2) possession of fifty grams or more of methamphetamine with intent to distribute; and (3) possession of a listed chemical knowing, or having reasonable cause to believe it would be used to manufacture a controlled substance. (Pet. at 3.)

1

The charges against Khoury, and his subsequent conviction, stem from his relationship, starting in January or February 1998, with Tommy Williams, a manufacturer of methamphetamine. (Answer at 1-3.) Khoury admitted at trial to purchasing two eight-ounce amounts of methamphetamine from Williams and also admitted that, sometime prior to October 1998, Williams gave him a substantial quantity of pills to store. (Reporter's Tr. on Appeal ("RT") at 234-38.) However, Khoury denied involvement in any conspiracy with Williams for the production and distribution of methamphetamine. (Id. at 287-306.)

Williams was arrested in October 1998, and a subsequent search of a Sacramento residence where Williams allegedly operated his lab found equipment and chemical for manufacturing methamphetamine, as well as empty bottles of precursor drugs. (Answer at 1-2.) Another year passed before Khoury was arrested and charged, during which time government agents obtained an incriminating statement from Khoury through a confidential informant. Khoury was arrested by local police after methamphetamine was discovered on him during a traffic stop. (Id.) Khoury was ultimately arrested after searches of his residence, an apartment complex he owned, and a warehouse he owned turned up various drug paraphernalia. (Id. at 2-3.)

Khoury went to trial in March 2001. Williams, who had entered into a plea agreement, testified that he and Khoury had an agreement to produce methamphetamine, that Khoury bought about 90% of what Williams made, and that Williams made about 25 lbs of

methamphetamine between April and October 1998.  (RT at 124-27.)

Khoury took the stand and admitted that he had bought and possessed a small quantity of drugs, but denied giving Williams money to buy pills and make drugs.  (Id. at 231-306.)  He also stated that he had lied in his incriminating statement to the informant and that the items found in the search were not drug paraphernalia.  (Id.)

Based on this and other testimony, Khoury was convicted of the three charges mentioned above and sentenced to 292 months confinement.  (Id. at 368.)  Khoury directly appealed his sentence, but the sole claim on appeal was that the court erred in failing to grant the suppression motion.  (Pet. at 6.) Khoury's conviction was affirmed by the Ninth Circuit on July 2, 2002.

Khoury filed this motion on June 9, 2003 to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  The government answered on August 11, 2003 and briefing on the motion was completed September 10, 2003 with the filing of petitioner's traverse.  By letter of July 7, 2004, Khoury requested that the court reopen briefing in order to address the impact of Blakely v. Washington, 124 S.Ct. 2531 (2004), on his claims.  The government submitted an opposition to this request on January 10, 2005.  Finally, on March 9, 2005, Khoury requested permission to file a supplemental brief to further develop his claim of

ineffective assistance of counsel.[1]

                                II.

     Khoury brings claims of ineffective assistance of trial and

appellate counsel, and judicial error.  Because Khoury did not

raise his claims of judicial error before the trial court or on

appeal, he cannot bring these claims unless he can demonstrate

"cause" for the failure, and "prejudice" from the error.  Baumann

v. United States, 692 F.2d 565, 572 (9th Cir. 1982.)  Cause may

be established where a petitioner can demonstrate that the

failure to raise the claim at an earlier stage was the result of

ineffective assistance of counsel.  Id.

     Unless the motion, the files and records of the case

conclusively show that petitioner is entitled to no relief, the

court must hold an evidentiary hearing on disputed factual issues

raised by the complaint.  28 U.S.C. § 2255.  The district court

is afforded wide latitude to deny an evidentiary hearing on an

ineffective assistance of counsel claim.  Ortiz v. Stewart, 149

---

     [1] The disposition of the March 9, 2005 motion is discussed
below at note 5.  On June 3, 2005, Khoury filed another motion to
amend his petition to add a Sixth Amendment Confrontation Clause
claim based on the recent holdings of Crawford v. Washington, 541
U.S. 36, 124 S.Ct. 1354 (2004), and Bockting v. Bayer, 399 F.3d
1010 (9th Cir. 2005).  Leave to amend may be properly denied if
the amendment would be futile.  Foman v. Davis, 371 U.S. 178,
182, 83 S.Ct 227 (1962).  An amendment is futile if the claim, as
amended, would be subject to dismissal.  Moore v. Kayport Package
Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989).  The holdings of
Crawford and Bockting apply only to the admission of hearsay
testimonial statements.  Mere references to absent parties or
witnesses do not implicate the Confrontation Clause.  Khoury has
not shown that any hearsay testimonial statements were admitted
at his trial.  Therefore, his motion to amend is DENIED as
futile.

                                4

F.3d 923, 934 (9th Cir. 1996).  If the court determines an evidentiary hearing is unnecessary, it shall make such disposition of the motion as justice dictates.  Rules Governing § 2255 Proceedings for the United States District Courts, Rule 8.

To obtain reversal of a conviction on the basis of ineffective assistance of counsel, a convicted defendant must show: (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness; and (2) that counsel's errors were so serious as to deprive the defendant of a fair trial.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1985).  There is a strong presumption that counsel's conduct falls within the within the wide range of reasonable professional assistance.  Id. at 689 (internal quotations omitted).  Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable.  LaGrand v. Stewart, 133 F.3d 1253, 1271 (9th Cir. 1998).  A tactical decision with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel.  Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984).  In examining the counsel's conduct, the court must avoid the distorting effect of hindsight.  Hendricks v. Calderon, 70 F.3d 1032, 1036 (9th Cir. 1995); La Grand, 133 F.3d at 1271. To establish prejudice, the second part of the test, a defendant must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Hendricks, 70 F.3d at 1032.  A reasonable probability

1   is a probability sufficient to undermine confidence in the

2   outcome.  Id.  The court is not required to consider both

3   components of this inquiry if the petitioner has made an

4   insufficient showing on one.  Strickland, 466 U.S. at 2069.  If

5   the petitioner has failed to demonstrate prejudice, the court

6   need not determine whether counsel's performance fell below the

7   range of professional competence.  Strickland, 466 U.S. at 2069.

8   The Strickland standard is rigorous and highly demanding.

9   Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574 (1986);

10  Paradis v. Arave, 20 F.3d 950, 959 (9th Cir. 1994).

11          III. Ineffective Assistance of Trial Counsel

12  A. Debriefing

13      In May 2000, Khoury participated in a debriefing session

14  with DEA agents and someone from the U.S. Attorney's office, in

15  which he admitted buying methamphetamine from Williams.  (RT at

16  287-88.) This debriefing session was cut short.  (Answer at 6.)

17  Khoury alleges that his counsel was deficient in failing to

18  schedule another debriefing session, which he alleges would have

19  led to a plea agreement.  (Pet. at 15.)  Respondent asserts that

20  no follow-up debriefing was done because it felt Khoury was not

21  being truthful or cooperative, and was demanding a lesser

22  sentence than the government was willing to offer.  (Answer at

23  6.)  Khoury has not contradicted this evidence.  There is no

24  evidence showing the government was interested in a further

25  debriefing or would have offered a better plea deal, had there

26  been a further meeting.  As Khoury has not demonstrated prejudice

1  from the failure to request a further debriefing, his claim fails
2  and is DISMISSED.

3      B. Plea Agreement

4      Khoury alleges that his counsel failed to disclose and
5  discuss with him plea agreements that had been offered by the
6  government, that he was not shown the plea agreements until after
7  sentencing, and that he would have accepted one of these plea
8  agreements.  (Pet. at 4, 6-7, 9, 15.)  The alleged failure of
9  counsel to present a plea agreement to a defendant states a claim
10 for ineffective assistance of counsel.  United States v.
11 Blaylock, 20 F.3d 1458, 1465-67 (9th Cir. 1994). The evidence
12 presented by the government does not conclusively demonstrate
13 that Khoury received notice of the alleged plea agreements, but
14 merely indicates that Khoury knew that his attorney was
15 attempting to negotiate a plea agreement, and that Khoury
16 anticipated those negotiations would be successful.  Whether any
17 plea offers were actually made and whether those offers, if any,
18 were presented to Khoury by his counsel are disputed factual
19 issues that cannot be resolved at this juncture.  An evidentiary
20 hearing is merited on this issue to determine whether the plea
21 offers, if any, were presented to Khoury.

22     C. Trial Testimony

23     Khoury alleges that his counsel was ineffective in failing
24 to advise him that there might be sentencing consequences if he
25 testified at trial, specifically that he might face a sentence
26 enhancement for obstruction of justice and lose the chance for a

7

sentence reduction for acceptance of responsibility. (Pet. at 25.)  These consequences do not follow from a decision to testify, but from a decision to testify falsely.  It is generally common knowledge that false testimony under oath may have negative consequences.  For that reason, it is questionable whether petitioner's counsel needed to advise him of the specific sentencing consequences of false testimony.  However, it is possible that Khoury might demonstrate that he should have been advised of these consequences and that he was prejudiced by counsel's alleged failure to advise him of the potential consequences of testifying, in that he might not have testified or would have been even more willing to accept a plea offer. Since this claim is intertwined with petitioner's assertion that he was not presented with the plea offers, the court will permit limited questioning on this claim at the evidentiary hearing.

D. Pre-trial Investigation of Impeachment Witnesses

Khoury alleges that his counsel should have done further investigation of three potential witnesses and should, perhaps, have called these witnesses to testify.  (Pet. at 5-7, 17.) Khoury alleges that these witnesses could have offered testimony to contradict Williams's testimony that Khoury was his only buyer, testimony which affected the amount attributed to petitioner for sentencing purposes.  (Id.)

Petitioner alleges that further investigation of Ed Rainwater would have shown that Rainwater was involved in a separate conspiracy with Williams and purchased Williams's

methamphetamine.  (Id. at 17.  At trial, Khoury's counsel

explored Rainwater's role in Williams's operation and attempted

to elicit testimony from Williams that Rainwater received 50% of

the drugs.  (Reporter's Tr. at 159.)  However, Williams testified

that Rainwater did not receive any drugs and instead got cash

from the sales to petitioner.  (Id.)  Khoury's counsel did pursue

this theory, but was unable to prove it at trial and petitioner

has not described what further testimony should have been offered

or what other investigation could have been fruitful, beyond that

discussed below as to Karen Watson.  As Khoury has failed to show

either incompetence or prejudice, this claim is without merit and

is DISMISSED.

Khoury also alleges that his counsel should have called

Penny Bianco to the stand to testify that Williams hated Khrouy,

providing a motive for Williams to lie about the scope of

Khoury's involvement in the methamphetamine operation.  (Pet. at

17.)  Even accepting Khoury's statement as to what the substance

of Bianco's testimony would have been, Khoury does not establish

prejudice.  To establish prejudice, the second part of the test,

Khoury must show there is a reasonable probability that, but for

counsel's errors, the result of the proceeding would have been

different.  Hendricks, 70 F.3d at 1032.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome.  Id.  Khoury's counsel elicited from Williams that he

had entered into a plea bargain and was receiving a reduced

sentence in exchange for his testimony.  (Reporter's Tr. at 151-

52).  Thus, the jury already knew that Williams had turn on
Khoury to obtain a sentencing benefit.  The additional
information that Williams disliked Khoury adds nothing and would
seem to state the obvious: by the time of trial there was no love
loset between Khoury and Williams.  Because Khoury has not shown
that there was a reasonable probability of a different outcome,
this claim is DISMISSED.

Finally, Khoury asserts that his counsel should have done
further investigation of Karen Watson and put her on the stand to
show that Williams had other purchasers of methamphetamine.
(Pet. at 4,5, 17, 21.)  The evidence in the record indicates that
Watson knew Williams for some time, participated in his drug
activities, and lived in the apartment complex inhabited by
Williams and owned by Khoury.  There is no evidence in the record
as to whether Watson was questioned by Khoury's counsel about
Williams's other customers or why she was not called to the
stand.  For that reason, the court will permit an evidentiary
hearing on the question of whether Khoury's counsel considered
what evidence Watson might have offered and the reason, if any,
that Watson was not called to testify.[2]

E. Suppression of Evidence

Khoury alleges that his counsel did not do enough to keep
out evidence obtained from the various searches.  This claim is
wholly without merit.  Prior to trial, on February 4, 2000,

---

[2] The court will also consider whether Watson should have
been called at a sentencing hearing.

Khoury's counsel made motions to suppress evidence from the traffic stop and from the building searches, raising the issues petitioner addresses in his petition.  (Docket Nos. 71-73.) These motions were denied by order of the court on August 14, 2000.  (Id. No. 102.)  This claim is DISMISSED.

F. Type of Drugs

Khoury argues that his counsel should have argued, and obtained an expert to verify, that the methamphetamine made by Williams was not Schedule II injectable methamphetamine but was instead Schedule III methamphetamine.  (Pet. at 18-19.)  This argument is without merit.  Although all methamphetamine other than injectable methamphetamine was initially placed in Schedule III, methamphetamine was eventually rescheduled to schedule II. In two different cases, the Ninth Circuit upheld the rescheduling of methamphetamine.  See United States v. Durham, 941 F.2d 886, 888-89 (9th Cir. 1991); United States v. Kendall, 887 F.2d 240, 241 (9th Cir. 1989).  The failure to make a meritless legal argument is not ineffective assistance of counsel.  Baumann, 692 F.2d at 572.  This claim is DISMISSED.

G. Quantity of Drugs

Khoury argues that his counsel should have obtained an expert to show that the pills seized at his warehouse, which were the basis of the count of possession of a listed chemical, could not have made more than one kilogram of methamphetamine, as charged in the conspiracy count.  (Pet. at 18-19.)  This claim reflects a misunderstanding as to the basis of the conspiracy

charged.   The conspiracy charge was based on the productive capacity of Williams's lab, not on the pills found at the warehouse.   Khoury was not prejudiced by counsel's failure to offer expert evidence on this point.   This claim is DISMISSED.

### H. Jury Instruction on Type and Quantity of Drugs

In a related claim, Khoury alleges that his counsel was ineffective in failing to request proper jury instructions regarding the type and quantity of the drugs.   (Pet. at 5, 9.) For the reasons stated above, this claim is without merit and is DISMISSED.

### I. Jury Instruction on Conspiracy Count

Khoury alleges that his counsel was ineffective in failing to object to a judicial statement to the jury in response to a jury question about the conspiracy count.   (Answer at 14.)   The court correctly instructed the jury that the crime of conspiracy is complete with the agreement, rather than with the criminal act.   This statement was carefully phrased after discussion with both sides.   (RT at 337-49.)   Khoury's counsel had no grounds to object to this comment because it was an accurate statement of the law.   Therefore, Khoury cannot establish either incompetence or prejudice, and this claim is DISMISSED.

### J. Ineffective Assistance of Counsel at Sentencing

Khoury makes claims of ineffective assistance of counsel at his sentencing.   All of these claims are without merit.

Petitioner claims that his counsel failed to make written objections to the pre-sentence investigation report.   (Pet. at

12

6.)  However, the docket reflects that objections were filed on June 7, 2001.  (Docket No. 163.)  Khoury also argues that his counsel was ineffective in failing to move for a downward departure based on the conditions at the Sacramento jail, citing one prior occasion where the court allegedly granted such a departure.  (Pet. at 37; Traverse at 15.)  However, Khoury has not demonstrated that it was reasonably likely that a departure would have been granted if requested and, therefore, has not demonstrated prejudice.  The same is true of Khoury's argument that his counsel was ineffective in failing to argue that the safety-valve was applicable.  (Pet. at 11.)  Khoury has not demonstrated that it was reasonably likely that the court would have found him eligible for the safety valve, and given the court's finding on the record that petitioner lied to the government and on the stand about his involvement, he cannot demonstrate prejudice.  These claims are DISMISSED.[3]

Khoury also makes vague allegations that his trial counsel did not show that Williams was lying, and that he acquiesced to the government's factual position.  (Pet. at 9, 17.)  These vague allegations are insufficient to show either ineffective assistance of counsel or prejudice and are DISMISSED.

IV. Apprendi Claims

Khoury asserts several claims of error in his sentencing based on the holding in Apprendi v. New Jersey, 530 U.S. 466, 120

---

[3] However, see note 2 above.

S.Ct 2348 (2000).  (Pet. at 27-35.)  Since petitioner filed his traverse, the Supreme Court has decided two other cases relevant to petitioner's claims, Blakely v. Washington, – - U.S. - -, 124 S.Ct. 2531 (2004) and United States v. Booker, 543 U.S. --, 125 S.Ct. 738, 2005 WL 50108 (2005).[4]  Petitioner alleges that the court engaged in impermissible judicial fact-finding in: (1) determining the quantity of drugs attributable to petitioner; (2) imposing an enhancement for obstruction of justice based on petitioner's testimony at trial; and (3) refusing downward departure for acceptance of responsibility.  (Id.)

In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490, 120 S.Ct 2348 (2000). "The relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  Blakely, 124 S.Ct. at 2537.  In Booker, the Supreme Court applied Blakely to the federal sentencing guidelines.  125 S.Ct. at 746.  However, petitioner's Apprendi claims, and his proposed Blakely and Booker claims are without merit because these decisions do not apply

---

[4] Petitioner has filed two requests for supplemental briefing since Blakely and Booker were decided. These requests are construed as motions to amend his petition. Because, as discussed below, these decisions do not apply retroactively on collateral review, petitioner's motions to amend are futile and are, therefore, DENIED.

retroactively.   In <u>Sanchez-Cervantes</u>, the Ninth Circuit held that "<u>Apprendi</u> does not apply retroactively to cases on initial collateral review."  282 F.3d 664, 671 (9th Cir. 2002).  The Ninth Circuit recently rejected the argument that <u>Blakely</u> affected this holding, stating that "neither <u>Summerlin</u> nor <u>Blakely</u> undermine [the] reasoning in <u>Sanchez-Cervantes</u> that the <u>Apprendi</u> rule is not retroactive and that rule stands." <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236, 1246 (9th Cir. 2005).

The reasoning behind <u>Sanchez-Cervantes</u> applies equally to <u>Blakely</u>, which is but an application of <u>Apprendi</u>.  <u>See, e.g.</u>, <u>Lilly v. United States</u>, 342 F.Supp.2d 532, 538 n.5 (W.D.Va. 2004) (listing cases); <u>United States v. Cino</u>, 340 F.Supp.2d 1113, 1118 (D.Nev. 2004).  Moreover, as explained in <u>Booker</u>, the jury trial right protected by <u>Apprendi</u> and <u>Blakely</u> only arises when the Sentencing Guidelines are treated as mandatory instead of advisory.  The Court held in <u>Booker</u> that the remedy for a <u>Blakely</u> violation is a sentence under advisory guidelines.  But such a remedy does not apply retroactively.  It is not a substantive rule of law.  <u>See</u> <u>McReynolds v. United States</u>, 397 F.3d 479, 480-81 (7th Cir. 2005) (finding that <u>Booker</u> is not a substantive rule because "[n]o conduct that was forbidden before <u>Booker</u> is permitted today [and] no maximum available sentence has been reduced").  Nor does it amount to a "watershed" rule of criminal procedure.  <u>See</u> <u>id.</u> at 481 (noting that "<u>Booker</u> does not in the end move any decision from judge to jury, or change the burden of persuasion").  A change in "the degree of flexibility judges

would enjoy in applying the guideline system" is not a "'watershed' change that fundamentally improves the accuracy of the criminal proceedings." Id. Petitioner's claims of sentencing errors under Apprendi are DISMISSED.

Nor can petitioner succeed in demonstrating that his counsel was ineffective in failing to raise the Apprendi claims at trial or on direct appeal. (3/9/2005 Request for Permission to Supplement Def.'s Mot. Pursuant to 28 U.S.C. § 2255 at 1-4.)  It was not objectively unreasonable for counsel to fail to make an Apprendi or Blakely claim, given the state of the case law at that time.  Counsel is entitled to exercise judgment as to whether to pursue certain claims or all conceivable claims. Counsel's failure to pursue an Apprendi/Blakely claim at trial or on appeal undoubtedly reflected counsel's view that the procedures followed at sentencing were not so unfair as to merit an attack on appeal in the face of contrary circuit authority. This exercise of judgment does not amount to ineffective assistance.[5]  This claim is DISMISSED.

V. Ineffective Assistance of Appellate Counsel

Finally, Khoury alleges that his appellate counsel was ineffective in that he failed to raise all appealable issues. (Pet. at 6, 7, 38.)  However, Khoury does not specifically

---

[5] In his March 9, 2005, petitioner requested permission to amend his petition to add a new claim that his appellate counsel was ineffective for failing to make Apprendi claims on appeal. For the reasons set forth above, this amendment would be futile. Therefore, the March 9, 2005 motion to amend is DENIED.

address which claims his counsel should have raised on appeal.
Absent some allegation of which claims should have been raised,
Khoury cannot demonstrate prejudice from the failure to raise
such claims.  Khoury's claims of ineffective assistance of
appellate counsel are DISMISSED.

                                VI.

     Because the record does not conclusively show that
petitioner is not entitled to relief, the following claims will
be set for a limited evidentiary hearing: (1) ineffective
assistance of counsel based on the alleged failure to inform
petitioner of plea offers; (2) ineffective assistance of counsel
based on the alleged failure to inform petitioner of the
consequences of testifying falsely; and (3) ineffective
assistance of counsel based on the alleged failure to investigate
potential witness Karen Watson and call her to testify at trial
or at a sentencing.  The remainder of petitioner's claims are
DISMISSED.  Counsel will be appointed to represent petitioner, as
required by United States v. Duarte-Higareda, 68 F.3d 369, 370
(9th Cir. 1995), and this matter set for an evidentiary hearing
on the limited issues addressed above.

////

////

////

IT IS SO ORDERED.

Dated: 6/9/2005

DAVID F. LEVI
United States District Judge